UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RYAN PEETERS,                    )      NO. EDCV 09-1369-CT
                                 )
            Plaintiff,           )      OPINION AND ORDER
                                 )
       v.                        )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                                 )
            Defendant.           )
_____  )

    For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.


                    SUMMARY OF PROCEEDINGS

    On July 20, 2009, plaintiff, Ryan Peeters ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). Subsequently, The parties consented to proceed before the magistrate judge.  On November 4, 2009, plaintiff filed a brief with points and

authorities in support of remand or reversal.  On December 1, 2009, the Commissioner filed a brief.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1.   Proceedings

On October 3, 2006, plaintiff filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability since August 1, 2005, due to a mental impairment. (See TR 169-74).[1]  The applications were denied initially and upon reconsideration.  (TR 73-74, 94, 103).

Thereafter, plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  On June 24, 2008, the ALJ held a hearing, during which plaintiff, his mother, a vocational expert, and a medical expert testified.  (TR 40-72).

On June 25, 2008, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, and thus was not eligible for SSI or DIB.  (TR 80-86).  Plaintiff then filed a request with the Social Security Appeals Council to review the ALJ's decision.

On August 28, 2008, the Appeals Council remanded the matter to the ALJ.  (TR 91-93).  In its remand order, the Appeals Council instructed the ALJ to, among other things, evaluate and assign weight to the statements made by a lay witness.[2]  (TR 92).  Thereafter, the ALJ held

---

[1]    "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

[2] As discussed below, one of plaintiff's contentions is that the ALJ failed to comply with this aspect of the Appeals Council's order.  He does not, however, contend that the ALJ

a second hearing, at which a second medical expert testified, as did a vocational expert.   (TR 16-39).   Ultimately, on March 10, 2009, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, and thus was not eligible for SSI or DIB.

On March 27, 2009, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision.   (TR 4).   On May 15, 2009, the request was denied.   (TR 1-3).   Accordingly, the ALJ's decision stands as the final decision of the Commissioner.   Plaintiff subsequently sought judicial review in this court.

### 2.   Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and order and materially summarizes the evidence in the case.

### PLAINTIFF'S CONTENTIONS

Plaintiff contends the ALJ failed to:

1.   Comply with an order from the Appeals Council to  consider the opinion of a lay witness;

2.   Properly consider the opinions of three of plaintiff's treating psychiatrists; and

3.   Pose a complete hypothetical question to the vocational expert and, consequently, erred in relying on the vocational expert's opinion.

### STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal

─────────────────

failed to comply with any other aspect of that order.

3

standards.   <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).
Substantial evidence means "more than a mere scintilla," <u>Richardson v.</u>
<u>Perales</u>, 402 U.S. 389, 401 (1971), but less than a preponderance.
<u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or
reversing the Commissioner's conclusion, however, the Court may not
substitute its judgment for that of the Commissioner.   <u>Flaten v.</u>
<u>Secretary of Health and Human Services</u>, 44 F.3d 1453, 1457 (9th Cir.
1995).   The court has the authority to affirm, modify, or reverse the
Commissioner's decision "with or without remanding the cause for
rehearing."   42 U.S.C. §405(g).

DISCUSSION

1.   <u>The Sequential Evaluation</u>

A person is "disabled" for the purpose of receiving social security
benefits if he or she is unable to "engage in any substantial gainful
activity by reason of any medically determinable physical or mental
impairment which can be expected to result in death or which has lasted
or can be expected to last for a continuous period of not less than 12
months."   42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation
for determining whether a person is disabled.   First, it is determined
whether the person is engaged in "substantial gainful activity."   If so,
benefits are denied.

Second, if the person is not so engaged, it is determined whether
the person has a medically severe impairment or combination of
impairments.   If the person does not have a severe impairment or

4

combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.   If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.   The person is entitled to benefits only if the person is unable to perform other work.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

   2.   Issues

   A.   Lay Witness Testimony (Issue #1)

Plaintiff asserts that the ALJ failed to comply with an Appeals Council order directing the ALJ to consider the statements of A.P.,[3] plaintiff's grandmother. Perryman submitted a third party function report, in which she described her observations of how plaintiff's impairments limit his activities.   (TR 220-27).   According   to plaintiff, the ALJ did not, as the Appeals Council ordered him to do, evaluate or assign weight to Perryman's third party function report.

The sworn statements of "friends and family members in a position to observe [plaintiff's] symptoms and daily activities have routinely

---

   [3] This court refers to lay witnesses by first and last initial.

5

been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). While an ALJ should consider even unsworn statements submitted by non-parties familiar with a plaintiff's limitations, see Schneider v. Commissioner, 223 F.3d 968, 974-75 (9th Cir. 2000), the ALJ may discount even the sworn testimony of a lay witness based upon reasons that are "germane" to that witness, Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996)(citation omitted).

The mere fact that a witness is a family member, alone, does not constitute a germane ground to reject the lay witness's testimony wholesale. See Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). An ALJ may, however, reject a lay witnesses statements if the ALJ finds the witness to be biased. E.g., Greger v. Barnhart, 464 F.3d 968, 972-73 (9th Cir. 2006) (the fact that girlfriend's "close relationship" with plaintiff "possibly" influenced her desire to help him was a germane reason to disregard her sworn affidavit). Other reasons "germane" to a particular witness may include that the witness's testimony is contradicted by the medical evidence of record or the plaintiff's own assessment of his or her limitations, Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005), or that the witness has made contradictory or inconsistent statements, e.g., Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

Here, contrary to plaintiff's assertion, the ALJ evaluated A.P.'s third party function report. Indeed, the ALJ dedicated a paragraph of his decision to summarizing the report. (TR 13). And although the ALJ did not assign a specific weight to the report, the clear thrust of the summary is that the ALJ found the report to be credible evidence.

Moreover, assuming without deciding that the ALJ erred in properly

assigning weight to the report or, as plaintiff suggests, in providing an incomplete summary of the report, any resulting error was harmless. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) ("[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error."). Although A.P. described some limitations that she attributed to plaintiff's impairments, she nevertheless concluded that plaintiff was capable of paying attention for a "long time" if focused on "only one event." (TR 225). Additionally, A.P. stated that plaintiff is able to follow written instructions "very well," that he is "brilliant with mathematics," that he has a degree in physics, and that he is an "avid reader." (Id. at 225, 227). Furthermore, she noted that, when he is complaint with his medication, plaintiff "very caring, considerate," and "easy to live with." (Id. at 227).

She also stated generally that plaintiff has difficulty with social interaction, particularly with strangers, and with stressful situations. (Id. at 225-27). However, the ALJ's residual functional capacity finding accounted for these limitations. (Id. at 11) (finding, among other things, that plaintiff was limited to "work consisting of simple, repetitive, non-public tasks, with only occasional non-intense interactions with co-workers and supervisors, no hyper-vigilance, and no fast paced work.").

This finding, moreover, comports with the testimony of two medical experts, both of whom testified that plaintiff should not interact with the public, that plaintiff had difficulties with social interaction, and that plaintiff should perform simple, non-complex work. (TR 12-13).

1  Indeed, as the ALJ summarized in his decision, one of the medical

2  experts testified that plaintiff "should preferably work by himself,

3  with no work requiring collaboration." (TR 12).   In short, the ALJ

4  considered and gave proper weight to any limitations on plaintiff's

5  ability to work that A.P. identified in her third party report.

6  Accordingly, assuming error, the ALJ's determination would nevertheless

7  remain legally valid. Carmickle, 533 F.3d at 1162.

8      B.   Treating Physicians (Issues #2, 3, & 4)

9      Plaintiff also contends that the ALJ failed to properly assess the

10  medical opinions of Imelda Alfonso, M.D., Han V. Nguyen, M.D., and Jon

11  Held, M.D., all three of whom were plaintiff's treating physicians.

12      A treating physician's opinion generally is entitled to great

13  weight.   See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)

14  (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); Sprague

15  v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). "The treating physician's

16  opinion is not, however, necessarily conclusive as to either a physical

17  condition or the ultimate issue of disability." Andrews v. Shalala, 53

18  F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d at 751).   The weight

19  given a treating physician's opinion depends on whether it is supported

20  by sufficient medical data and is consistent with other evidence in the

21  record.   See 20 C.F.R. § 404.1527.

22      "The ALJ may disregard the treating physician's opinion whether or

23  not that opinion is contradicted." Andrews v. Shalala, 53 F.3d at 1041

24  (citing Magallanes v. Bowen, 881 F.2d at 751).   A medical opinion is

25  considered uncontroverted if all the underlying medical findings in the

26  record of plaintiff's physical impairments are similar.   Sprague v.

27  Bowen, 812 F.2d at 1230.   To reject the uncontroverted opinion of

28                                    8

plaintiff's physician, the ALJ must present clear and convincing reasons for doing so. <u>Andrews v. Shalala</u>, 53 F.3d at 1041 (citing <u>Magallanes v. Bowen</u>, 881 F.2d at 751). If the treating physician's opinion is contradicted by other doctors, the Commissioner may not reject the opinion without providing "specific and legitimate reasons" for doing so that are supported by substantial evidence. <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001) (citing <u>Reddick v. Chater</u>, 157 F.3d 715 (9th Cir. 1998)). <u>See also</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148-49 (9th Cir. 2001).

### 1.   Dr. Alfonso

The ALJ did not materially err in rejecting Dr. Alfonso's opinion. On the contrary, the ALJ cited three legitimate reasons for doing so. First, the ALJ summarized the opinions of not one, but two testifying medical experts, both of whom reviewed the medical evidence, including Dr. Alfonso's treatment notes, and both of whom concluded that Dr. Alfonso's assessment was unsupported. (TR 12-13). Further, both concluded that plaintiff could perform the type of work that the ALJ found plaintiff capable of performing. As both medical experts were subject to cross-examination, the ALJ could properly rely on their respective opinions in rejecting Dr. Alfonso's contrary opinion. <u>See</u> <u>Andrews</u>, 53 F.3d at 1042 (stating that ALJ should accord greater weight to nonexamining physician who testifies at hearing); <u>citing</u> <u>Torres v. Secretary of Health & Human Servs.</u>, 870 F.2d 742, 744 (1st Cir. 1989) (greater weight may be given to opinion of nonexamining expert who testifies at hearing subject to cross-examination).

Second, as noted by one of the testifying medical experts and as cited by the ALJ, Dr. Alfonso's opinion regarding plaintiff's inability

to work was unsupported by any clinical findings or medical evidence. Instead, Dr. Alfonso's finding that plaintiff was unable to work was based on plaintiff's self-reporting.   The Ninth Circuit permits an ALJ to rely on an absence of objective findings to reject a treating physician's opinion.  Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide specific and legitimate basis for ALJ to reject treating physician's opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (psychologist's assessment based on claimant's complaints and information submitted by friends, relatives and former counselor properly rejected by ALJ when not supported by objective medical data or reports); Buckhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating physician's opinion when he fails to provide objective descriptions of medical findings).

Third, the ALJ cited the fact that Dr. Alfonso's records were internally inconsistent. (TR 12-13).  Specifically, the ALJ cited the testimony of one of the testifying medical experts that, despite Dr. Alfonso's conclusions, his treatment notes showed prolonged improvement in plaintiff's condition in 2006 and 2007 and that plaintiff's symptoms abated when properly medicated.  (Id.).  Indeed, one of the medical experts noted that Dr. Alfonso's treatment notes simply repeated each other without accounting for changes in plaintiff's condition.  (TR 58).

There is no material legal error here.

2.   Drs. Nguyen and Held

In an October 5, 2005 assessment note, Dr. Nguyen diagnosed plaintiff with depressive disorder, not otherwise specified, and with a panic attack disorder without agoraphobia.  Dr. Nguyen also assessed

plaintiff with a Global Assessment Functioning ("GAF") score of 48.[4]  A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders p. 34 (4th ed. 2000 (DSM-IV)).   Approximately six weeks earlier, Dr. Held, after examining plaintiff, likewise diagnosed plaintiff with depressive disorder, not otherwise specified, and with a panic attack disorder without agoraphobia.   Dr. Held further assessed plaintiff with a GAF score of 44 and opined that plaintiff's condition rendered him unable to work.  (TR 318, 323).

Plaintiff contends that the ALJ failed to properly assess both Dr. Nguyen's and Dr. Held's respective assessments.  First, the ALJ not only considered Dr. Nguyen's opinion, but, in fact, the ALJ summarized Dr. Nguyen's findings.  (TR 13).  However, in addition to summarizing Dr. Nguyen's one-time 2005 assessment, the ALJ also summarized plaintiff's medical history after that assessment.  (TR 12-13).  That summary, which is supported by the record, shows that plaintiff's condition improved. Accordingly, while the 2005 assessment was not irrelevant to the ALJ's conclusions, it was undercut by plaintiff's subsequent treatment records, which showed that plaintiff was near stable by June of 2006 and continued to show improvement through 2007, provided his was compliant with his medications.  (TR 12-13).  Thus, to the extent that other

---

[4]   "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

medical evidence in the record conflicted with, or undermined, Dr. Nguyen's 2005 opinion, the ALJ was free to resolve the conflict as he saw fit. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ can meet his burden to cite "specific and legitimate reasons" for rejecting medical evidence where the ALJ "'set[s] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[es] [any] interpretation thereof, and mak[es] findings.'"); Andrews, 53 F.3d at 1041 (ALJ has "sole[] province" to resolve conflicts between credible, yet conflicting, medical evidence).

Second, although the ALJ did not explicitly discuss Dr. Held's findings, the ALJ nevertheless considered the pertinent records and, in any event, committed no material error with respect to his assessment of Dr. Held's opinion.  In his decision, the ALJ summarized Dr. Held's treatment notes regarding plaintiff's August 24, 2005 visit with Dr. Held.  (TR 13).  Moreover, the ALJ noted that, during this visit, plaintiff informed Dr. Held that plaintiff was unable to work because of "anxiety attacks and ritualistic behavior."  (TR 13).  As plaintiff's self-reporting served as the basis for Dr. Held's opinion, the ALJ's summary of that reporting was adequate in terms of summarizing Dr. Held's opinion.  Indeed, Dr. Held's opinion essentially reflects the ALJ's summary of plaintiff's complaints.  (Compare TR 13, with id. at 322-23).

More importantly, however, assuming without deciding that the ALJ erred in considering Dr. Held's opinion, the resulting error was demonstrably harmless. Carmickle, 533 F.3d at 1162.  If evidence is cumulative of other evidence specifically addressed, the ALJ is not required to address and discount the cumulative evidence.  See

12

1   <u>Magallanes v. Brown</u>, 881 F.2d 747, 755 (9th Cir. 1989).  Here, at best,

2   Dr. Held's opinion was merely cumulative evidence.  Specifically, Dr.

3   Held's August 24, 2005 assessment was nearly identical to Dr. Nguyen's

4   October 6, 2005 assessment.   As such, the ALJ was not required to

5   specifically address it in his decision.   And in any event, Dr. Held's

6   opinion, like Dr. Nguyen's opinion, was undermined by subsequent

7   treatment notes showing that plaintiff's condition improved in 2006 and

8   2007 when he was complaint with his medication.

9          There was no material error here.

10                C.    <u>Vocational Expert</u>(Issue #5)

11         Plaintiff contends the ALJ erred in failing to give a complete

12   hypothetical to the vocational expert ("VE").   Specifically, plaintiff

13   contends  that  the  ALJ's  hypothetical  failed  to  account  for  the

14   functional limitations described by Dr. Alfonso. (<u>See</u> <u>supra</u>).

15         The assumptions contained in an ALJ's hypothetical to a VE must be

16   supported by the record; otherwise, the opinion of the VE that the

17   plaintiff has residual working capacity has no evidentiary value.

18   <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1993); <u>Embrey v. Bowen</u>,

19   849 F.2d 418, 422 (9th Cir. 1988).   Hypothetical questions posed to the

20   VE must set out all of the plaintiff's limitations and restrictions.

21   <u>Embrey v. Bowen</u>, 849 F.2d at 422.   The hypothetical question must be

22   "accurate, detailed and supported by the medical record." <u>Osenbrock v.</u>

23   <u>Apfel</u>, 240 F.3d 1157, 1165 (9th Cir. 2001) (citing <u>Tackett v. Apfel</u>, 180

24   F.3d 1094, 1101 (9th Cir. 1999)).

25         Here, the purported deficiency in the ALJ's hypothetical assumes

26   that the ALJ erred in assessing Dr. Alfonso's opinion.   However, as

27   explained in the preceding section, the ALJ committed no such error.

28                                        13

Because the ALJ properly rejected Dr. Alfonso's opinion, the ALJ was not required to include in the hypothetical the limitations about which Dr. Alfonso opined.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005)  (ALJ properly excluded from VE hypothetical limitations that were not credible and supported by substantial evidence in the record); Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989) (holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record).

There was no material error here.

## CONCLUSION

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: 12/17/09

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

14

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| <u>IN THE CASE OF</u> | <u>CLAIM FOR</u> |
|---|---|

Period of Disability, Disability Insurance
Benefits, (MQGE) and Supplemental
Ryan Stephen Peeters                       Security Income
(Claimant)

                                           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
(Wage Earner)                              (Social Security Number)

<u>**JURISDICTION AND PROCEDURAL HISTORY**</u>

This case is before the undersigned Administrative Law Judge on remand from the Appeals
Council. The claimant appeared and testified at a hearing held on December 18, 2008, in San
Bernardino, CA. Also appearing and testifying were David Glassmire, an impartial medical
expert and Sandra M Fioretti, an impartial vocational expert. The claimant is represented by
Mark Tunnell, an attorney.

In its remand order, the Appeals Council directed the undersigned to further explain the weight
given to the opinion evidence, address the claimant credibility, address third party lay witness
statements and give further consideration to the claimant's maximum residual functional
capacity.

The claimant is alleging disability since August 1, 2005.

<u>**ISSUES**</u>

A general issue is whether the claimant is entitled to Medicare benefits as a federally qualified
employee. Specific issues are whether the claimant can be considered to have a disability under
section 216 (i) of the Social Security Act, as amended; the onset of such disability; whether the
disability has lasted 25 months or longer; and if so, the date of entitlement to Medicare insurance
benefits.

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of
the Social Security Act. Disability is defined as the inability to engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment or combination
of impairments that can be expected to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an
additional issue whether the insured status requirements of sections 216(i) and 223 of the Social
Security Act are met. The claimant's earnings record shows that the claimant has acquired

**8**

See Next Page



sufficient quarters of coverage to remain insured through September 30, 2006. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from August 1, 2005 through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

**9**

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)).  An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965).  If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.    The claimant met the insured status requirements of the Social Security Act through September 30, 2006.**

**2.    The claimant has not engaged in substantial gainful activity since August 1, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

The claimant worked after the established disability onset date but this work activity did not rise to the level of substantial gainful activity.  The claimant has worked as a substitute teacher 3 to 4 times a month but did not earn more than $800 at any time.  He also worked on and off as a figure model for drawing classes but never earned more than $200 per month.

**10**

**3.   The claimant has the following severe impairments: Obsessive compulsive disorder, depressive disorder NOS, and marijuana abuse. (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).**

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).**

The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.09.  In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied.  To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A marked limitation means more than moderate but less than extreme.  Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction.  In social functioning, the claimant has moderate difficulties.  With regard to concentration, persistence or pace, the claimant has moderate difficulties.  As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform work consisting of simple, repetitive, non-public tasks, with only occasional non-intense interactions with co-workers and supervisors, no hyper-vigilance, and no fast paced work.**

**11**

Ryan Stephen Peeters (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)                                           Page 5 of 8

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

At the hearing, the claimant testified that his condition has not changed since the last hearing. Psychologically he is still the same; he has trouble with sleeping and attention. He has been having treatment at Phoenix clinic every 5 to 8 weeks and still uses the same medications. He feels that as he has not tried to work or get out into the world, he has not decompensated. The stress of dealing with other people and bosses bothers him – he is afraid of what he might do. He has not done any figure modeling since the last hearing. He has not had any problems with ritualistic behavior in the last 6 months.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

At the prior hearing, the medical expert, Dr. Malancharuvil testified that the claimant has an anxiety disorder NOS with some obsessive compulsive features, reactive disorder, and personality disorder NOS. He is mildly limited in activities of daily living, moderately limited in social functioning and in concentration persistence or pace. There are no reported episodes of decompensation. He would be limited to moderately complex tasks in repetitive, object oriented setting. He should avoid intense, emotionally charged interaction with the public and should preferably work by himself, with no work requiring collaboration. His obsessive compulsive features would not interfere with his work. The medical expert disagreed with the assessment of Dr. Alfonso dated February 12, 2008 (Exhibit 10F), which is not supported by any records. In fact, progress notes signed by Dr. Alfonso from the Department of Mental Health indicate the claimant was doing well with medication and throughout 2006 and 2007 he was less depressed

**12**

See Next Page

and with decreased obsessive compulsions.  Dr. Malancharuvil noted that during that period almost all the progress notes were identical, and he could not give much weight to them.

The medical expert Dr. Glassmire testified at the hearing on December 18, 2008 and noted that the claimant had an obsessive compulsive disorder, depressive disorder NOS and marijuana abuse – the quantity and frequency unknown.  On September 26, 2007, the claimant was seen at Phoenix Clinic.  Then, he still had OCD behavior but less intense.  There were no delusions and audial hallucinations were all gone.  He had no suicidal ideations.  His Zyprexa was increased and his compliance was fair.  He feels he is still unable to work due to OCD symptoms and ritualistic behavior.  Notes from January 24, 2008 indicate he was stable.  Dr. Glassmire also reviewed the forms of assessment of Dr. Alfonso dated February 12, 2008 (Exhibit 10F), and stated that the ratings of "extreme" are not supported by treatment records and the claimant's symptoms are less intense when he is taking medication. His sleep patterns may be affected by marijuana use, depression, or life style choices.  The note from the claimant's grandmother includes allegations that are not supported by treatment records.  Dr. Glassmire concluded the claimant is mildly limited in activities of daily living, moderately limited in social functioning and concentration, persistence or pace and with no evidence of episodes of decompensation.  The claimant is capable of performing simple, repetitive, non-public tasks with occasional non-intense interaction with others and no hypervigilance or fast paced work.

At the intake examination with Phoenix Clinic on August 24, 2005 the claimant complained of depressed mood, insomnia, mood swings, irritability, frequent severe panic attacks, and ritualistic/obsessive/compulsive behavior associated with food.  He has been self medicating with marijuana with increased severity of panic attacks.  He has a history of citations for marijuana possession.  History of prior treatment includes Effexor, Ativan and Ambien.  He states he is unable to keep a job due to anxiety attacks and ritualistic behaviors.  On October 6, 2005 he was diagnosed with depressive disorder, NOS, panic disorder without agoraphobia, and prescribed Effexor, BuSpar and Trazodone.  In May 2006, he complained he still could not sleep at night, and OCD symptoms and ritualistic behaviors were still present and have gotten worse due to increased stress.  He had fair compliance with medication.  He was still not stable but gradually improving.  By June 2006 he was more stable on medications (Exhibit 4F).

On October 16, 2006, the claimant's grandmother completed a 3rd Party Function report and stated that the claimant had lived in her home for 25 years.  He had problems as a child and no one could diagnose it.  He had a breakdown in college but managed to get his degree in physics.  He is brilliant with math and is an avid reader.  He feels safe in her quiet, peaceful home.  His mother provides a weekly allowance for bus fare and lunch.  He is very caring and considerate, and easy to live with on medication.  He works as a figure model for 4 colleges in the area, which he loves but the work is irregular (Exhibit 4E).

**6.    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).**

**7.    The claimant was born on September 10, 1976 and was 28 years old, which is defined as , on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**13**

**8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.    Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision making (SSR 85-15).

The claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as industrial cleaner, with 2,200 jobs in the region (after 25% erosion to avoid interaction with others), hand packager with 3,500 jobs regionally after 50% erosion, and office helper with 1,500 jobs in the regional economy.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

**14**

See Next Page

Ryan Stephen Peeters (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)                    Page 8 of 8

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on October 3, 2006, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on October 3, 2006, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.


/s/ *Jesse J. Pease*
—————————————————
Jesse J. Pease
Administrative Law Judge

March 10, 2009
—————————————————
CT                                Date


**15**